UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-304-FDW

| ROBERT LAMAR McFADDEN, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| HUBERT CORPENING, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), and on Plaintiff's Motion for the Appointment of Counsel. (Doc. No. 3). He is proceeding *in forma pauperis*. See (Doc. No. 7).

## I. BACKGROUND

*Pro se* Plaintiff Robert Lamar McFadden, who is an inmate at the Marion Correctional Institution, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. He names as Defendants: Marion C.I. Superintendent Hubert Corpening, Assistant Superintendent Donald Watkins, Superintendent of "RDU Program"[1] Julie Jenkins, and Captain of Internal Affairs FNU Faircloth.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff is in the RDU Program at Marion C.I. Inmates who receive infractions and are placed on E-unit segregation

---

[1] The Court takes judicial notice that the RDU Program was created as part of NC DPS's recent policy reforms regarding restrictive housing in North Carolina prisons. See Wilcox, Digard, & Vanko, The Safe Alternatives to Segregation Initiative: Findings and Recommendations for the North Carolina Department of Public Safety, at p.3 (Vera Institute of Justice, Dec. 2016), *available at* https://www.ncdps.gov/safe-alternatives-segregation-report. The RDU program was "designed to help people transition from Control to regular population through the provision of targeted behavioral programming and increasing privileges, congregate activity, and out-of-cell time. Id.

1

are not allowed to have their radios and are not otherwise informed of important current news. Defendant Jenkins is using this to force inmates back to the program and complete it without further incident. Plaintiff has informed each of the Defendants that he is being deprived of news via newspapers, newsletters, radio, and television. Defendant Corpening told Plaintiff that it is up to the families to order newspapers/newsletters for inmates. Plaintiff claims that Defendants are violating his First Amendment rights by failing to provide inmates with some kind of access to the outside world since radios are not allowed and there is a rule against having news on the television. (Doc. No. 1 at 7).

Plaintiff seeks injunctive relief including the provision of news to inmates; compensatory, punitive, and nominal damages; and a jury trial.

## II.     STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

2

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. MOTION FOR THE APPOINTMENT OF COUNSEL

In support of his Motion for the Appointment of Counsel, Plaintiff states that he is unable to afford counsel, is proceeding *in forma pauperis*, he is incarcerated and is housed in segregation which will greatly limit his ability to litigate, the issues in the case are complex and will require significant research and investigation, counsel would be better able to present evidence and cross-examine witnesses, and Plaintiff has attempted to obtain a lawyer.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v.

3

Simmons, 814 F.2d 962, 966 (4th Cir. 1987). This case does not present exceptional circumstances that justify the appointment of counsel. Therefore, Plaintiff's Motion for the Appointment of Counsel will be denied.

### IV. DISCUSSION

**(1) First Amendment**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Procunier v. Martinez, 416 U.S. 396, 412 (1974), *limited by* Thornburgh v. Abbott, 490 U.S. 401 (1989); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

Plaintiff's allegations are insufficient to set forth a First Amendment violation. Plaintiff admits that he is part of the RDU Program and that radios are taken from inmates who receive infractions to encourage them to complete the program successfully. This is precisely the type of disciplinary control that falls well within prison authorities' discretion. See generally Sandin v. Connor, 515 U.S. 472, 485 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."); Beard v. Banks, 548 U.S. 521 (2006) (on motion for summary judgment, prison officials showed

4

that the policy of restricting access to newspapers, magazines, and photographs, for prisoners in a long-term segregation unit was justified by the need to provide particularly difficult prisoners with incentives for good behavior). Plaintiff fails to allege that there was no rational connection between prison authorities' actions and a legitimate governmental interest, or that he lacked an alternative means of expressing himself. For instance, he admits that Defendant Corpening told him that access to newspapers and newsletters can be arranged. Plaintiff has failed to state a First Amendment free speech violation under these circumstances. See e.g., Hughes v. City of Mariposa, 2011 WL 5118448 (E.D. Ca. Oct. 27, 2011) (dismissing prisoner's First Amendment claim that a jailer took a periodical away from him because he failed to allege there was no rational connection between the jail's policy and a legitimate governmental interest, or that he did not have any other means of exercising his right). Therefore, Plaintiff's First Amendment claim is dismissed.

**(2)     Eighth Amendment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34.

To establish a violation of the Eighth Amendment in the context of a challenge to

conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

To the extent that Plaintiff attempts to allege that the denial of news is an Eighth Amendment violation, this claim too fails. Depriving prisoners of access to radios, newspapers, and television as part of a disciplinary program does not constitute an extreme deprivation of the minimum civilized measure of life's necessities that is contemplated by the Eighth Amendment. See, e.g., Graham v. Perez, 121 F.Supp.2d 317 (S.D.N.Y 2000) (dismissing prisoners' Eighth Amendment conditions of confinement claims for failure to state a claim because protective custody inmates' limited access to newspapers and personal phone calls were not serious deprivations of basic human needs); Brown v. McBride, 929 F.Supp. 1132 (N.D. Ind. 1996) (prisoner failed to state an Eighth Amendment claim because lack of access to television or games, limited shower access, and sharing a limited number of sinks, water fountains, and similar fixtures with other inmates did not deprive a prisoner of the minimal civilized measure of life's necessities); Collins v. Ward, 544 F.Supp. 408, 413 (S.D.N.Y. 1982) (inmate failed to state an Eighth Amendment claim because dirty cells for three days, no exercise for three days, no visitors for five days, confinement indoors for seven days, and no radio for eight days "simply do not make out a claim of 'barbarous' or 'shocking' treatment."). Therefore, to the extent Plaintiff intended to assert

an Eighth Amendment claim, it is insufficient to proceed.[2]

## V. CONCLUSION

For the reasons stated herein, the Complaint is deficient and subject to dismissal. Plaintiff shall have fourteen (14) days in which to file an Amended Complaint in which he may attempt to cure these deficiencies and state a facially sufficient claim for relief. Plaintiff is reminded that, despite his *pro se* status, he must comply with all applicable procedures and rules including the Federal Rules of Civil Procedure and the Court's Local Rules. His attention is particularly drawn to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a "short and plain" statement of the claim. Any Amended Complaint will supersede the original Complaint and therefore any Defendants or claims not contained in the Amended Complaint will be waived. Plaintiff's failure to timely file an Amended Complaint that complies with this Order will result in this case being dismissed and closed without prejudice and without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** as facially insufficient pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Plaintiff shall have fourteen (14) days in which to file an Amended Complaint in accordance with this order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint in accordance with this Order, this action will be dismissed and closed without prejudice and without further notice to Plaintiff.

---

[2] This is not the first time Plaintiff has challenged the conditions of confinement that are part of the RDU Program in this Court. See McFadden v. Jenkins, 1:17-cv-98-FDW (dismissing Plaintiff's Eighth Amendment claim based on restricted access to hygiene products in the RDU Program for failure to state a claim).

3. The Clerk is directed to mail a copy of a new Section 1983 complaint form to Plaintiff.

4. Plaintiff's Motion for the Appointment of Counsel, (Doc. No. 3), is **DENIED**.

Signed: March 13, 2018

Frank D. Whitney
Chief United States District Judge